UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



------------------------------------------------X    Civil Case No.:

ROSE CARMICHAEL                    :

             Plaintiff,    :

                               :

         -against-                 :

                               :

CHARMER INDUSTRIES, INC., and    :
EMPIRE MERCHANTS, LLC,           :

             Defendants.    :

------------------------------------------------X

**COMPLAINT**

<u>PLAINTIFF
DEMANDS A
TRIAL BY JURY</u>

08    445

DEARIE, CH.

GOLD, M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 3 1 2008 ★

BROOKLYN OFFICE

      Plaintiff, Rose Carmichael ("Carmichael" or "Plaintiff"), by and through her attorneys, The Law Office of Borrelli & Associates P.L.L.C., complaining of Defendants, Charmer Industries, Inc. ("Charmer") and Empire Merchants ("Empire"), (collectively referred to as "Defendants"), respectfully alleges, upon knowledge as to herself and her own actions and upon information and belief as to all other matters, as follows:

### *NATURE OF THE ACTION*

1.    This action is brought to remedy discrimination and harassment on the basis of race and retaliation in the terms, conditions, and privileges of employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"); discrimination and harassment on the basis of age and retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 216(B) ("ADEA"); discrimination and harassment on the basis of age, race and retaliation in violation of the New York Executive Law §290, *et seq.*

("NYSHRL"); the Administrative Code of the City of New York, § 8-801 *et seq.* ("NYCHRL"); discrimination on the basis of race in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981; intentional infliction of emotional distress; and any other cause of action that can be inferred from the facts set forth herein.

2. Defendants' actions were unlawful, and Plaintiff brings this action for injunctive and declaratory relief, compensatory damages, attorneys' fees, and other appropriate equitable and legal relief.

### JURISDICTION

3. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 1367. The supplemental jurisdiction of the Court, 28 U.S.C. §1367 is invoked over state and local law causes of action.

### CONDITIONS PRECEDENT

4. Plaintiff filed a timely charge of discrimination against Defendants with the Equal Employment Opportunity Commission (the "EEOC") on or about May 2007, complaining of the acts of discrimination alleged herein within 300 of the acts of which she complains, EEOC charge No. 520-2007-01557.

5. On or about October 31, 2007, the EEOC issued Plaintiff a Notice of Right to Sue, informing her of her right to sue Defendants in federal court. A copy of the Notice of Right to Sue is annexed hereto and made a part hereof as Exhibit "A."

6. This Complaint was filed within 90 days of receipt of the Notice of Right to Sue.

### *VENUE*

7. Venue for this action in the Eastern District of New York is proper under 28 U.S.C. §1391.

### *PARTIES*

8. Plaintiff was and still is a resident of the State of New York and county of Queens residing at 118-18 262nd Street, St. Albans, NY 11412.

9. Plaintiff is a 54-year-old African-American female.

10. Plaintiff, at all times material herein, was an "employee" entitled to protection within the meanings of Title VII pursuant to 42 U.S.C. 2000e § 701(f); the ADEA, the NYSHRL under § 292(6); and § 8-101, et seq. of the NYCHRL.

11. Charmer is a domestic business corporation duly organized and existing under the laws of the State of New York and the county of Queens with a principal place of business located at 19-50 48th Avenue, Astoria, NY 11105.

12. Defendant Charmer, at all times material herein, was an "employer" of Plaintiff within the meaning of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

13. On or about February 2007, Charmer and Peerless Importers, Inc. contributed their respective assets to form Empire.  Empire is a successor in interest to Charmer and/or a joint employer.

14. Empire was and still is a foreign business limited liability company duly organized and existing under the laws of the Delaware and the county of Kings with a principal place of business located at 19-50 48th Ave., Astoria, NY 11105.

15. Empire is a wine and spirits distributor in New York.

16. Defendant Empire, at all times material herein, was an "employer" of Plaintiff within the meaning of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

## FACTUAL ALLEGATIONS

17. Beginning on or about May 1992 until April 10, 2007, Plaintiff was employed by Defendants.  From on or about 1994, Plaintiff was subject to a continuing hostile work environment and suffered numerous adverse employment actions.

18. On or about May 1992, Plaintiff was employed by Charmer as a temporary Administrative Secretary for Charmer's Vice-President for three (3) months. After the successful completion of the three (3) month period, Plaintiff became a permanent union employee continuing to work as an Administrative Secretary.

19.  On or about July 1994, Plaintiff was transferred to the Metropolitan Greater Division ("MGD") as a Clerk.  Woody Turner ("Turner") was the General Manager at MGD.

20.  Upon information and belief, Turner was one of few African-American General Managers working for Charmer.

21.  Plaintiff shared the office with two (2) white females, Lisa Przykuta ("Przykuta"), who was also the office supervisor, Terry Palumbo ("Palumbo"), and four (4) white male sales managers.

22.  On or about October 3, 1995, Turner was fired and replaced by Joe Ascoli ("Ascoli"), white male.

23.  Upon Plaintiff's transfer, Przykuta and Palumbo exhibited a hostile attitude towards her.  Upon Turner's termination, administration favored the white employees over Plaintiff in assignments and treatment.

24.  Przykuta was permitted to attend school at Queens College during work hours. Przykuta would leave the office at approximately 10:30 a.m. and return between 1:30 – 2:30 p.m., during which time Plaintiff was working in the office.

25.  On or about January 23, 1996, Przykuta and Palumbo were talking about Plaintiff's responsibilities in her presence and referred to her as "she." Plaintiff interrupted them making her presence known and asked the two (2) of them to refer to her as "Rose" or to directly talk to her if they have any questions. Przykuta replied, "Well, it's a white thing."

26.  On or about 1996, Przykuta degraded, mocked and humiliated Plaintiff by undermining her, speaking rudely to her, bringing false allegations against her, failing to inform Ascoli of Plaintiff's scheduled day off in advance, etc.

27.  Plaintiff contacted the Union Shop Steward, Peter Hilderbrand ("Hilderbrand"), who took no action on her behalf.

28.  On or about February 1, 1996, Plaintiff punched-out for lunch break at 12:02 p.m. When Plaintiff returned from lunch around 1:18 p.m., Przykuta told her in an angry voice that she was late and that she should inform Ascoli about that fact. However, Plaintiff was entitled to 15 extra minutes on Thursdays.

29.  On the same day, Przykuta left for lunch around 1:25 pm and returned around 2:45 pm.

30.  On the same at approximately 3:15 p.m., Ascoli met with Przykuta in private to discuss Plaintiff exceeding her lunchtime.

31.    Subsequently, Plaintiff asked Ascoli if he and Przykuta could meet with her. Ascoli responded that he spoke already with Przykuta about the incident. He stated that Przykuta is an administrator, he believes her, and if Plaintiff has any further complaints she should talk directly to Przykuta. Plaintiff was not given opportunity to speak. Plaintiff was distraught at the disparate treatment aimed at her by Przykuta and supported by her supervisor, Ascoli.

32.    Subsequently, later in February 1996, Plaintiff contacted Przykuta and asked her whether she would be allowed to take her lunchtime around 1:00 p.m. in order for Plaintiff to move her car. Przykuta said no without any other explanation. Przykuta further criticized Plaintiff during the conversation. Przykuta accommodated other white employees in similar situations.

33.    On or February 2, 1996, Plaintiff called Annette Perry, Manager Human Resources ("Perry") and asked for a meeting to discuss the treatment and recent allegations asserted in a complaint against her that she had received. Perry was not available to meet with her.

34.    Subsequently, Plaintiff contacted Hilderbrand to complain and explained to him that she is treated differently and unfairly because she was the only African-American in that department.

35.   On or about February 8, 1996, Plaintiff prepared a grievance and planned to submit it but Perry and Ascoli stopped her and told her that if she would drop the grievance, she would be able to continue working in the MGD.  Plaintiff agreed and did not file the grievance.

36.   On or about October 1996, Plaintiff was transferred against her will to the Order Board ("OB"), despite Perry and Ascoli previously stating that Plaintiff would remain in her position at MGD.

37.   Upon her transfer to the OB, Perry told Plaintiff that she would be working at OB from now on and that she should start dressing down.  Again, Plaintiff felt embarrassed and realized that she was not wanted at Charmer regardless of her good performance because she is African-American.

38.   Plaintiff worked at the OB as a clerk under Supervisor Alan Weiner ("Weiner").

39.   Despite the fact that there were approximately eight (8) other clerks working at the OB in the same title, Weiner directed all the phone lines to the Plaintiff's phone.  Upon information and belief, all other clerks in the OB at that time were non African-American.

40.  While Plaintiff was performing her job, the other white females with whom Plaintiff was sharing the office with would read books, chat with coworkers and take many cigarette breaks.

41.  On or about November 1996, a Charmer customer called to thank Plaintiff for treating him nicely and helping him.

42.  Subsequently, Perry told Plaintiff to report to the Warehouse starting the next day working for Manager Robert Lingham ("Lingham").

43.  On or about November 1996, Plaintiff reported to the Warehouse.

44.  Initially, Plaintiff did not have a desk and chair and no worked assigned for her. Plaintiff asked coworker, Ginger Rocco if she would be permitted to help her to strip the invoices to do some work.

45.  Subsequently, Plaintiff was forced to share a filthy and wet office desk and chair with a male supervisor employee.

46.  Plaintiff was not given a hardhat to wear like the other Warehouse workers.

47.  While working in the warehouse, Lingham had workers in his office; one of
     them named Charles Benevenuto ("Benevenuto") took off his shirt in front of
     Plaintiff. Plaintiff felt embarrassed and left the office.

48.  Plaintiff subsequently complained to her supervisor about Benevenuto's
     conduct.

49.  On or about July 1999, Plaintiff was promoted to a non-union Administrative
     Assistant in the Operations Department ("OD"). Plaintiff received an increase
     of $40.00 weekly.

50.  Maria Pizzolo ("Pizzolo") was hired on or about the same time as Plaintiff.
     Pizzalo held the same responsibilities as Plaintiff.

51.  Pizzolo did not have computer knowledge and while Plaintiff handled the office
     responsibilities including Pizzolo's duties, Pizzolo would practice typing.

52.  Pizzolo spent most of the time in Supervisor Roy Kohn's ("Kohn") office.
     Plaintiff felt that she was hired to cover for Pizzolo. Plaintiff's salary was
     around $40,000.00 per year, while Pizzolo's was around $80,000.00 per year.

53.  Supervisor, Jim Stahl ('Stahl") placed an anonymous letter on Steve Drucker's
     ("Drucker"), CEO desk. The letter stated that Kohn goes out every morning to

meet his white secretary and walk her back to the office, but he does not do the same for his black secretary.

54. Upon the letter incident, Perry transferred Pizzolo to another office.

55. Plaintiff did not receive transit expenses or a car allowance while all of the other non-union employees received such allowance.

56. Pizzolo was replaced with Eddie Cook ("Cook") who did not know to use a computer and he was paid around $80,000.00 yearly.

57. Defendants use yearly and half yearly performance appraisals to describe and evaluate the employee's performance.

58. During the year 1998, Plaintiff received a positive performance evaluation. The evaluation stated that Plaintiff's performance met her employer's legitimate expectations.

59. On or about July 1999, Plaintiff was forced to undergo a drug test that was not required for her position. The drug test took place at the lunchroom occupied by men. Plaintiff felt embarrassed and humiliated.

60.   During the year 1999, under the supervision and direction of Stahl and Kohn, Plaintiff received a positive performance evaluation. The evaluation stated that Plaintiff's performance met her employer's legitimate expectations and exceeded expectations in some aspects.

61.   On or about 1999, Plaintiff received an annual bonus of $2,000.00 based on her good work performance.

62.   During the year 2000, under the supervision and direction of Stahl and Kohn, Plaintiff received a good performance evaluation. The evaluation stated that Plaintiff has performed well in all job responsibilities.

63.   On or about 2000, Plaintiff received an annual bonus of $2,200.00 based on her good work performance.

64.   On or about 2000, Perry suggested Plaintiff go to school and stated that Charmer would pay for it. Perry recommended that Plaintiff attend classes at Adelphi University. Perry also stated that Charmer would pay for the books.

65.   On or about 2001, under the supervision and direction of Stahl, Kohn and Mike Celenza ("Celenza"), Plaintiff received a good performance evaluation. The evaluation shows that Plaintiff's performance met her employer legitimate

expectations and exceeded expectations in written communication, file organization, supply ordering, label inventory and computer data entry.

66.   On or about 2001, Plaintiff received an annual bonus of $2,400.00 based on her good performance.

67.   On or about 2001, Plaintiff started her classes at Adelphi University.

68.   On or about 2003, when Plaintiff submitted receipts to Perry for the reimbursement of the school books she was declined.

69.   On or about 2002, under the supervision and direction of Stahl and Celenza, Plaintiff received a very good performance evaluation. The evaluation states that Plaintiff's performance met her employer legitimate expectations and exceeded expectations in some aspects.

70.   On or about 2002, Plaintiff received an annual bonus of $2,000.00 based on her good performance.

71.   On or about June 2002, Plaintiff applied for the Wine List Manager position at Park Avenue Division.  The position was listed on June 19, 2002.

72.   Defendants denied Plaintiff's application. The Hiring Manager, Michael Reick ("Reick') hired Theresa Lenahan ("Lenahan"), white female, approximately 34 years old. At that time Plaintiff was 49 years old. Lenahan was put in charge of the entire department.

73.   On or about November 2002, Plaintiff applied for the Executive Assistant position at the Executive Office Division. The position was listed on November 7, 2002.

74.   Defendants denied Plaintiff's transfer application. Hiring Manager, Jeanette Viscovich and Stephen Meresman hired Mary (last name unknown), white female, approximately 33 years old. At that time Plaintiff was 49 years of age.

75.   During 2003, under the supervision and direction of Stahl, Erik Owings ("Owings") and Kohn, Plaintiff received a very good performance evaluation. The evaluation stated that Plaintiff performed her job properly and handled all aspects of her position.

76.   On or about 2003, Plaintiff received an annual bonus of $2,000.00 based on her good performance.

77.   On or about May 2003, Plaintiff applied for the Price Posting Coordinator position at the Purchasing Planner/Buyer-Agent Division. The position was listed on May 28, 2003.

78.   Plaintiff met with Jon Donnelly ("Donnelly") at approximately 7:30 a.m. in his office for the interview.   His staff was not there as yet.   Donnelly explained Plaintiff the new job responsibilities.   Further, he stated that he is looking to hire someone to fill the position for another 30 years. He impliedly stated that Plaintiff was too old for that position.   At that time Plaintiff was 50 years old.

79.   Donnelly eventually hired Nancy Nolan, a younger white female.

80.   On or about August 2003, Plaintiff applied for the Assistant Channel Manager position at the Channel Management Division. The position was listed on August 3, 2003.

81.   Empire denied Plaintiff's transfer application.   Hiring Managers, Lou Macolino & Paul Sharp hired Andrea Androtsakis, white female, approximately 30 years old.   Plaintiff at that time was 50 years old.

82.   On or about November 2003, Plaintiff contacted James Vicente ('Vincente') with regard to an Account Development Specialist positions at Charmer. There

were three (3) job positions available which where listed on November 25, 2003.

83.  Kelly Brewer, white female, approximately 25 years old, Sandra Williams, Hispanic female, approximately 27 years old, and Kurt Bohrer, white male, approximately 25 years old were hired by Defendants. At that time Plaintiff was 50 (fifty) years old.

84.  On or about November 2003, Plaintiff applied for the Account Development Specialist. The position was listed on November 25, 2003.

85.  Sobel and the Human Resources Department rejected plaintiff's application instead hiring Maria Bordone, late 20's to mid-30s, Hispanic Female. At that time Plaintiff was 50 years of age.

86.  On or about 2004, under the supervision and direction of Stahl, Owings and Kohn, Plaintiff received a good performance evaluation. The evaluation stated that Plaintiff completed her tasks and that she continues to be a positive asset to the operation department.

87.  On or about 2004, Plaintiff received an annual bonus of $1,500.00 based on her good performance.

88.   On or about February 2004, Plaintiff applied for the Sales position at Regal House/Greater Metro. The position was listed on February 17, 2004.

89.   Subsequently Plaintiff went on an interview with hiring Managers, Sobel, Ira Friedman ("Friedman") and Mike Kelly ("Kelly").

90.   Defendants hired Sure Vegas, Hispanic female, approximately 28 years old. At that time Plaintiff was 51 (fifty-one) years old.

91.   On or about May 2004, Plaintiff applied for the Assistant Director of Finance & Administration position at Division Purchasing Planner/Buyer/Agent Division. The position was posted at March 19, 2004.

92.   Defendants denied Plaintiff's transfer application.

93.   Plaintiff met with Donnelly at approximately 7:30 a.m. in his office for the interview. His staff was not there as yet. Donnelly explained Plaintiff the new job responsibilities. Further, he stated that he is looking to hire someone to fill the position for another 30 years. He impliedly stated that Plaintiff is too old for that position. Plaintiff at that time was 51 years old.

94.    Initially, Donnelly hired a white female for a short period of time and subsequently, he hired Adam Gold ("Gold"), white male, approximately 28 years old. Plaintiff at that time was 51 years of age.

95.    On or about May 2004, Plaintiff applied for the Merchandiser position at Park Avenue Division. There were two (2) positions available and they were listed on May 28, 2004.

96.    Plaintiff's transfer application was rejected.

97.    Defendants hired Lucuara Edward, Hispanic female, approximately 20 years old. Plaintiff at that time was 51 years old.

98.    On or about June 2004, Plaintiff applied for the Administrative Manager position at SWL Divison. There were two (2) positions available listed on June 11, 2004.

99.    Hiring Manager, Lenahan rejected Plaintiff's application and hired Roxanne Colon, Hispanic female, approximately 33 years old and Philip Blanchfield, white male, approximately 25 years old. Plaintiff at that time was 51 years old.

100.   On or about July 2004, Plaintiff applied for the Administrative Manager Level II position at Park Avenue Division. The position was listed on July 12, 2004.

101. Plaintiff's application was rejected.  Defendants hired Kema Whelam, Asian female, approximately 42 years old.  At that time Plaintiff was 51 years old.

102. On or about November 2004, Plaintiff applied for the Purchasing Planner/Buyer/Agent position at Assistant Purchasing Division.  The position was posted at November 19, 2004.

103. Defendants denied Plaintiff's application.

104. On or about 2005, under her new supervisor, Lenahan, Plaintiff was subject to improper and unwarranted criticism of work and received an unsatisfactory performance evaluation.  Plaintiff refused to sign the evaluation.

105. On or about 2005, Plaintiff received an annual bonus of $1,250.00 based on her work performance.

106. On or about April 26, 2005, Perry called Plaintiff for a meeting in her office. When Plaintiff entered Perry's office, Kohn, Michael Reick ("Reick") and Lenahan were present.

107. During the meeting, Perry announced in a statement that Plaintiff's position in the OD would be eliminated but that there was a position, Administrative

Manager, available for Plaintiff under the supervision of Lenahan in the Standard Wine and Liquor Department ("SWLD").

108. Plaintiff asked for an outline of the duties and responsibilities of the new position. Perry replied that there was no description for the new position.

109. Initially, Plaintiff worked directly with supervisor, Brenda Julio ("Julio") and thus did not interact with Lenahan.

110. Plaintiff's work included performing basic reports for Vicente and the Director of Bacardi Brands. Plaintiff was working with Phil Blanchard ("Blanchard"), at which time they had a good work relationship.

111. Under Julio's supervision, there were no complaints about Plaintiff's work.

112. Subsequently, Julio left Charmer. Lenahan then became Plaintiff's direct supervisor again. Plaintiff was the only African-American in that department.

113. During a meeting, Plaintiff asked Lenahan whether she is entitled to the reimbursement for travel and expenses as per company policy. Lenahan replied, stating that "No you don't have the right personality." Plaintiff felt humiliated by Lenahan's conduct.

114. Lenahan did not communicate nor have any work relationship with Plaintiff. Under the circumstances, Plaintiff was forced to communicate to Lenahan through coworker Mary Orta ("Orta").

115. Orta instructed Plaintiff on how to perform her job and requested many times multiple corrections about the same assignment.

116. Orta, Blanchard and Dominick Bruccleri purposely attempted to make Plaintiff appear incompetent.

117. During 2005, at one of the meetings, Lenahan asked Plaintiff what she likes the most about the new job. Plaintiff stated that she was impressed with the new Dive software and that she got familiar with the program very quickly.

118. After that meeting, Plaintiff's work was manipulated and she had to make calls to the IT Department almost every day to fix the problems. Furthermore, she was constantly asked to re-do her work. Plaintiff was reprimanded for calls to Dive Software asking for a way to protect her work from others.

119. At that time, Lenahan permitted coworkers to access Plaintiff's computer file and documents.

120. Plaintiff complained to Perry about Lenahan's treatment of her.

121. Due to the hostile work environment, Plaintiff sought medical help and had started seeing a cardiologist. Plaintiff wore a heart monitor for one (1) week to calculate her heart rate and measure the blood pressure. The Cardiologist advised Plaintiff to buy a blood pressure monitor to measure her blood pressure daily.

122. On or about July  2005, Plaintiff applied for the Premium Brand Specialist position at  Regal House Office Division.  The position was listed on July 30, 2005.

123. Plaintiff's application transfer was denied.

124. Hiring Manger, Vicente hired Kelly Brewer, white female, approximately 28 years of age. At that time Plaintiff was 52 years old.

125. On or about November 21, 2005, Plaintiff applied for the Account Development Specialist position at SWL. Hiring Manager, Laurie Maniatis ("Maniatis") rejected plaintiff's transfer application.   Plaintiff received an email from Shakanda Drones stating that she had to take a test for the position.  No test was required on the job requisition.

126. Defendants hired Nichole Bsoco, white female, approximately 30 years of age. At that time, Plaintiff was 52 years old.

127. On or about November 23, 2005, Plaintiff applied for Administrative Manager/ Supervisor position at SWL Division. Hiring Manager Lenahan rejected plaintiff's promotional application.

128. Defendants claimed that they were no longer hiring for the position. However, later this position title was change to Assistant Director of Finance. Defendants hired Gold for the position. At that time, Plaintiff was 52 years old.

129. Gold was hired replacing Julio. Gold became Plaintiff's supervisor. At that time Plaintiff was 52 years of age.

130. On or about December 5, 2005, Plaintiff applied for Administrative Manger position at Park Avenue Division. Hiring Manager, Nina Nilson rejected plaintiff's transfer application.

131. Defendants hired Sue Vergas, Hispanic female, approximately 29 years old. At that time, Plaintiff was 52 years old.

132. On or about March 23, 2006, Plaintiff applied for Assistant Director of Finance & Administration position. Lenahan and the Human Resource Department rejected plaintiff's application.

133. On or about April 2006, Plaintiff met with Perry to discuss her 2005 job evaluation that she received from Lenahan. Plaintiff stated that Lenahan subjects her to a hostile work environment. Plaintiff also added that Lenahan denied Plaintiff's request for travel and expense reimbursement. Plaintiff informed Perry of Lenahan's remarks "that Plaintiff does not have the right personality to receive travel and expense." Perry stated that she would inform Reick about her case.

134. Subsequently, Plaintiff met with Reick. He stated that Lenahan does not have the authority to approve travel and expenses and that she could not have denied Plaintiff's request. Reick also, stated that he was the only one who can approve Transit and Expense. Plaintiff was humiliated.

135. On or about January 17, 2007, Harry from the mailroom delivered Plaintiff an open envelope addressed to her. Enclosed in the open envelope was Plaintiff's 401K statement. This was the second time when Plaintiff received an open envelope. Plaintiff complained to Perry.

136. On or about January 17, 2007, Empire held a Policy and Procedure meeting. All Charmer non-union employees received emails or letters stating to attend the said meeting. Plaintiff was not called for the above meeting.

137. On or about January 17, 2007, Lenahan and Mary Fernandez, attended the 8:30 am meeting. Plaintiff overheard Lenahan calling Roxanne Colon ("Colon") to attend the 1:00 pm meeting. Even though Plaintiff was nearby at her desk, Lenahan did not call Plaintiff to attend the said meeting.

138. Subsequently, at approximately 1:15 p.m., Plaintiff stepped into the meeting without the invite, David Perry, Director of Education asked Plaintiff to leave the meeting room, stating, "this meeting is not for you, Rose." Plaintiff stated that she is a non-union employee and she should be allowed to attend the meeting just like every other non-union employee. David Perry insisted that Plaintiff should leave the room adding that he would meet with her the following day and explain. Embarrassed, Plaintiff left the meeting room.

139. Plaintiff was also excluded from The Defendants' 2006 Budget Report meeting.

140. On or about January 25, 2007, Plaintiff sent an email to Perry to complain about being discriminated against. Perry was unavailable. Plaintiff then complained to Reick about the discriminatory treatment aimed at her by David Perry and Lenahan. Reick took no action against David Perry.

141. On or about January 31, 2007 Plaintiff filed a complaint with Ann Giambusso, EVP, HR ("Giambusso"). In her complaint to the Giambusso, Plaintiff alleged that she was treated differently when she was not called for the January 17th

Policy and Procedure Meeting.    Furthermore, Plaintiff stated that she experiences constant racial discrimination.    Plaintiff request to meet with Giambossio and discuss in an open manner.

142. Giambossio failed to respond to Plaintiff's allegations.

143. On or about February 2007, Plaintiff was required to complete the New Hot Sheet Format assignment.  Plaintiff worked under the supervision on Lenahan.

144. On or about February 2, 2007, Plaintiff managed and fit all SWL Programs into the new format and forwarded the assignment to Lenahan.

145. On or about February 7, 2007, at approximately 11:30 am, Lenahan called Plaintiff in her office.  Lenahan yelled at Plaintiff as to why she did not complete the New Hot Format assignment. Plaintiff replied, stating that she finished the assignment was completed on February 2nd and was submitted to the appropriate department.

146. During the discussion, Lenahan yelled at Plaintiff and did not allow her to speak. As Plaintiff attempted to speak to Lenahan, Lenahan held her head down and placed her arms around her head so that she could not see nor hear.

147. On or about February 7, 2007 at approximately 2:00 p.m., Lenahan came to Plaintiff and while pointing her index finger at her face stating in a loud voice that she wants "the work done by Friday".

148. Plaintiff met with Reick and complained about Lenahan's discriminatory conduct. Plaintiff stated that she is very devoted to her work but that Lenahan mistreats and unequally treats Plaintiff.

149. Furthermore, Plaintiff met with Perry to report Lenahan's discriminatory treatment of her. Perry took no action.

150. On or about February 8, 2007, Plaintiff filed a second complaint with Giambusso, Reick and Perry. Plaintiff alleged that she has been subjected to unfair and unequal treatment from her supervisors because of her color.

151. Neither Reick, nor Giambusso nor Perry responded to Plaintiff's allegations.

152. On or about April 10, 2007, Plaintiff received a termination letter stating that as a result of restructuring, Defendants terminated Plaintiff's employment as of April 20, 2007.

153. Plaintiff's termination from employment was a merely a pretext for discrimination and retaliation.

## FIRST CLAIM AGAINST DEFENDANTS
### (Race Discrimination and Harassment under Title VII)

154. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

155. Title VII prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

156. Plaintiff is an African American and as such, is member of a protected class.

157. Plaintiff's termination from employment was a pretext for race discrimination.

158. Defendants discriminated against Plaintiff in violation of Title VII because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

159. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

160. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under Title VII and are thereby liable to Plaintiff for compensatory damages under Title VII.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## SECOND CLAIM AGAINST DEFENDANTS
### (Race Discrimination and Harassment under the NYSHRL)

161. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

162. The New York State Human Rights Law, New York Executive Law §296 prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

163. Plaintiff is an African American and as such, is member of a protected class.

164. Plaintiff's termination from employment was a pretext for race discrimination.

165. Defendants discriminated against Plaintiff in violation of Title VII because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

166. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

167. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the New York Human Rights Law and are thereby liable to Plaintiff for compensatory damages under the New York Human Rights Law.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## THIRD CLAIM AGAINST DEFENDANTS
### (Race Discrimination and Harassment under the NYCHRL)

168. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

169. The New York City Human Rights Law, prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

170. Plaintiff is an African American and as such, is member of a protected class.

171. Plaintiff's termination from employment was a pretext for race discrimination.

172. Defendants discriminated against Plaintiff in violation of Title VII because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

173. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

174. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the New York City Human Rights Law and are thereby liable to Plaintiff for compensatory damages under the New York Human Rights Law.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## FOURTH CLAIM AGAINST DEFENDANTS
### (Retaliation in violation of Title VII)

175. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

176. Plaintiff complained to Defendants about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by Title VII.

177. Defendants discriminated and retaliated against Plaintiff because of her complaints and opposition to discrimination.

178. Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of Title VII.

179. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

180. Defendants' actions were done with malice and with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## FIFTH CLAIM AGAINST DEFENDANTS
### (Retaliation in Violation of the NYSHRL)

181. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

182. Plaintiff complained to Defendants about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by the NYSHRL.

183. Defendants discriminated and retaliated against Plaintiff because of her complaints and opposition to discrimination.

184. Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of the NYSHRL.

185. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

186. Defendants' actions were done with malice and with reckless indifference to Plaintiff's protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## SIXTH CLAIM AGAINST DEFENDANTS
### (Retaliation in Violation of the NYCHRL)

187. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

188. Plaintiff complained to Defendants about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by the NYCHRL.

189. Defendants discriminated and retaliated against Plaintiff because of her complaints and opposition to discrimination.

190. Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of the NYCHRL.

191. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

192. Defendants' actions were done with malice and with reckless indifference to Plaintiff's protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## SEVENTH CLAIM AGAINST DEFENDANTS
### (Age Discrimination and Harassment under the ADEA)

193. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

194. The ADEA prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's age.

195. Plaintiff is Fifty Four year old and as such, is member of a protected class.

196. Plaintiff's termination from employment was a pretext for age discrimination.

197. Defendants discriminated against Plaintiff in violation of the ADEA because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

198. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

199. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the ADEA are thereby liable to Plaintiff for compensatory damages under the ADEA.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

**EIGHTH CLAIM AGAINST DEFENDANTS**
**(Age Discrimination and Harassment under the NYSHRL)**

200. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

201. New York State Human Rights Law, New York Executive Law §296 prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's age.

202. Plaintiff is Fifty Four year old and as such, is member of a protected class.

203. Plaintiff's termination from employment was a pretext for age discrimination.

204. Defendants discriminated against Plaintiff in violation of the NYSHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

205. Plaintiff's termination from employment was a pretext for age discrimination.

206. Defendants discriminated against Plaintiff in violation of the NYSHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

207. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

208. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the New York Human Rights Law and are thereby liable to Plaintiff for compensatory damages under the New York Human Rights Law.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## NINTH CLAIM AGAINST DEFENDANTS
### (Age Discrimination and Harassment under the NYCHRL)

209. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

210. The New York City Human Rights Law prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's age.

211. Plaintiff is Fifty Four year old and as such, is member of a protected class.

212. Plaintiff's termination from employment was a pretext for age discrimination.

213. Defendants discriminated against Plaintiff in violation of the NYCHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment.

214. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

215. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the New York City Human Rights Law and are thereby liable to Plaintiff for compensatory damages under the New York City Human Rights Law.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further

requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## TENTH CLAIM AGAINST DEFENDANTS
### (Intentional Infliction of Emotional Distress)

216. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

217. Defendants, by the actions described herein exhibited extreme and outrageous conduct.

218. In undertaking the aforementioned actions, Defendants intended to cause Plaintiff severe emotional distress.

219. The aforementioned conduct has caused Plaintiff severe emotional distress and mental anguish.

220. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer damages.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further

requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## ELEVENTH CAUSE OF ACTION
### (Violation of 42 U.S.C. Section 1981)

221. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

222. Defendants by their discriminatory and retaliatory conduct as outlined above violate the Thirteenth Amendment to the Constitution as protected by 42 U.S.C. § 1981.

223. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer damages.

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury in this action.


    Dated: Carle Place, New York
           January 30, 2008

                            Respectfully Submitted,

                            The Law Office of
                            BORRELLI & ASSOCIATES, P.L.L.C.


                    By: _____
                            MICHAEL J. BORRELLI (MB 8533)

                            *Attorneys for Plaintiff*
                            One Old Country Road, Suite 347
                            Carle Place, NY 11514
                            Tel. (516) 248-5550
                            Fax. (516) 248-6027

RECYCLED PAPER MADE FROM

AVERY

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Rose Carmichael<br>111-18 202 Street<br>Saint Albans, NY 11412 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2007-01557 | Jeanette P. Wooten,<br>Investigator | (212) 336-3753 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Spencer H. Lewis, Jr.,**
**Director**

31 Oct 07
(Date Mailed)

Enclosure(s)

cc: EMPIRE MERCHANT LLC
Director Of Personnel
19-50 48th Street
Astoria, NY 11105