UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

| | | |
|---|---|---|
| ROSE CARMICHAEL | : | |
| | : | <u>SECOND AMENDED</u> |
| Plaintiff, | : | <u>COMPLAINT</u> |
| | : | |
| | : | <u>Jury Trial Demanded</u> |
| -against- | : | |
| | : | **08 CV 445 (RJD)(SMG)** |
| | : | |
| CHARMER INDUSTRIES, INC, EMPIRE | : | |
| MERCHANTS, LLC,  THERESA LENAHAN, | : | |
| individual, ANNETTE PERRY, individual | : | |
| and DAVID PERRY, individual, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------X

Plaintiff, Rose Carmichael ("Carmichael" or "Plaintiff"), by and through her

attorneys, The Law Office of Borrelli & Associates P.L.L.C., complaining of Defendant

Charmer Industries, Inc. ("Charmer"), Defendant Empire Merchants, LLC ("Empire"),

Defendant Theresa Lenahan, Defendant Annette Perry ("Perry"), and Defendant David

Perry ("D. Perry"), (collectively referred to herein as "Defendants"), respectfully alleges,

upon knowledge as to herself and her own actions and upon information and belief as to

all other matters, as follows:

### *NATURE OF THE ACTION*

1. This action is brought to remedy discrimination and harassment on the basis of

    race and retaliation in the terms, conditions, and privileges of employment under

    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

    ("Title VII"); discrimination and harassment on the basis of age and retaliation in

    violation of the Age Discrimination in Employment Act of 1967, as amended, 29

    U.S.C. § 216(B) ("ADEA"); discrimination and harassment on the basis of race,

age, and retaliation in violation of the New York Executive Law §290, *et seq.* ("NYSHRL") and the Administrative Code of the City of New York, § 8-801 *et seq.* ("NYCHRL"); discrimination on the basis of race and retaliation in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981; and any other cause of action that can be inferred from the facts set forth herein.

2.  Defendants' actions were unlawful and done with reckless indifference to Plaintiff's rights.  Plaintiff brings this action for injunctive and declaratory relief, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, and other appropriate equitable and legal relief.

## *JURISDICTION*

3.  Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 1367.  The supplemental jurisdiction of the Court, 28 U.S.C. §1367 is invoked over state and local law causes of action.

## *CONDITIONS PRECEDENT*

4.  Plaintiff filed a timely charge of discrimination against Defendant Charmer and Defendant Empire with the Equal Employment Opportunity Commission (the "EEOC") on or about May 2007, complaining of the acts of discrimination alleged herein within 300 of the acts of which she complains, EEOC charge No. 520-2007-01557.

5.  Plaintiff amended said charge, adding allegations on or about July 2007.

6.  On or about October 31, 2007, the EEOC issued Plaintiff a Notice of Right to Sue, informing her of her right to sue Defendant Charmer and Defendant Empire

in federal court.  A copy of the Notice of Right to Sue is annexed hereto and made a part hereof as Exhibit "A"

7.  The Complaint commencing this Action was filed within 90 days of receipt of the Notice of Right to Sue.

### VENUE

8.  Venue for this action in the Eastern District of New York is proper under 28 U.S.C. §1391.

### PARTIES

9.  Plaintiff was and still is a resident of the State of New York and Queens County.

10.  Plaintiff is a 55 year-old African-American female.

11.  Plaintiff, at all times material herein, was an "employee" entitled to protection within the meanings of Title VII pursuant to 42 U.S.C. 2000e § 701(f); the ADEA, the NYSHRL under § 292(6); and a "person" entitled to protection under § 8-101, et seq. of the NYCHRL.

12.  Charmer is a domestic business corporation duly organized and existing under the laws of the State of New York and the county of Queens with a principal place of business located at 19-50 48th Avenue, Astoria, N.Y. 11105.

13.  Defendant Charmer, at all times material herein, was an "employer" of Plaintiff within the meaning of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

14.  On or about February 2007, Charmer and Peerless Importers, Inc. contributed their respective assets to form Empire.  Empire is a successor in interest to Charmer and/or a joint/ single employer.

15. Empire was and still is a foreign business limited liability company duly organized and existing under the laws of the Delaware and the county of Kings with a principal place of business located at 19-50 48th Avenue, Astoria, N.Y. 11105.

16. Empire is a wine and spirits distributor in New York.

17. Defendant Empire, at all times material herein, was an "employer" of Plaintiff within the meaning of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

18. Lenahan, at all relevant times herein, is an employee of Charmer and/or Empire, and is a "person" under the NYSHRL §292(1).

19. Perry, at all relevant times herein, is an employee of Charmer and/or Empire, and is a "person" under the NYSHRL §292(1).

20. D. Perry, at all relevant times herein, is an employee of Charmer, and is a "person" under the NYSHRL §292(1).

### FACTUAL ALLEGATIONS

21. Beginning on or about May 1992 until April 10, 2007, Plaintiff was employed by Defendant Empire and/or Charmer.

22. On or about May 1992, Plaintiff was employed by Defendant Charmer as a temporary Administrative Secretary for Charmer's Vice President for three (3) months.

23. After the successful completion of the three (3) month period, Plaintiff became a permanent union employee continuing to work as an Administrative Secretary.

24. On or about July 1994, Plaintiff was transferred to the Metropolitan Greater Division ("MGD") as a Clerk. Woody Turner ("Turner") was the General Manager at MGD.

25. Upon information and belief, Turner was the first African-American General Manager working for Charmer. Turner was replaced by Joe Ascoli, white male ("Ascoli") in or about October 1995.

26. While working at the MGD under Ascoli, Plaintiff was the only African American employee in that department which consisted of approximately at least eight (8) people.

27. While working at the MGD, Plaintiff was subject to discrimination and harassment as well as a hostile work environment because of her race including but not limited to being degraded, mocked and humiliated, undermined, being spoken to rudely, having false allegations made against her, having Ascoli make accommodations for white employees that he didn't make for her, having her supervisor fail to inform her manager of Plaintiff's scheduled day off in advance, having her supervisor support the adverse treatment and being told by her supervisor and her coworker that, "It's a white thing."

28. Plaintiff was emotionally distraught at the disparate treatment aimed at her and which was supported by her Ascoli in that any time Plaintiff complained to Ascoli, he sided against her.

29. Because of the discrimination and harassment, Plaintiff contacted the Union Shop Steward, Peter Hilderbrand ("Hilderbrand") on more than one (1) occasion, who took no action on her behalf.

30. On or February 2, 1996, Plaintiff called Human Resources ("HR") Manager Perry, white female, and asked for a meeting to discuss the discrimination and harassment. Perry failed to meet with Plaintiff.

31. On or about February 8, 1996, Plaintiff prepared a grievance and planned to submit it to HR but Perry and Ascoli stopped her and told her that if she did not drop the grievance, she would no longer be able to continue working in the MGD. Plaintiff agreed and did not file the grievance.

32. Notwithstanding Perry and Ascoli's promises, on or about October 1996, Plaintiff was transferred against her will to the Order Board ("OB").

33. Upon her transfer to the OB, Perry told Plaintiff that she would be working at the OB from now on and that she should start dressing down. Plaintiff felt embarrassed and again though that she was not wanted at Charmer regardless of her performance because she is African-American.

34. Plaintiff worked at the OB as a clerk under the supervision of Alan Weiner ("Weiner"), white male.

35. Despite the fact that there was approximately eight (8) other clerks working at the OB in the same title, Weiner directed all the phone lines to the Plaintiff's phone. Upon information and belief, all other clerks in the OB at that time were non-African-American.

36. While Plaintiff was performing her job, the other white females with whom Plaintiff was sharing the office with would read books, chat with coworkers and take many cigarette breaks.

37.  On or about November 1996, a customer called to thank Plaintiff for treating him nicely and helping him.

38.  Later in or about November 1996, Perry told Plaintiff to report to the Warehouse starting the next day working for Manager Robert Lingham ("Lingham").

39.  On or about November 1996, Plaintiff reported to the Warehouse.

40.  While working at the Warehouse, Plaintiff was discriminated against and harassed because of her race and/or retaliated against by not initially being given a desk and chair or any work assigned to her, eventually being forced to utilize a filthy and wet office desk and chair and not being given a hardhat to wear like other Warehouse workers.

41.  While working in the warehouse, Lingham had workers in his office; one of them, Charles Benevenuto ("Benevenuto") took off his shirt in front of Plaintiff. Plaintiff felt embarrassed and left the office.

42.  Plaintiff subsequently complained to Lingham about Benevenuto's conduct.

43.  On or about July 1999, Plaintiff was promoted to a non-union Administrative Assistant position in the Operations Department ("OD").  Plaintiff received an increase of ($40.00) dollars weekly.

44.  While working at the OD, Plaintiff was discriminated against, harassed and subjected to a hostile work environment because of her race and/or as a means of retaliation against her for previous complaints by being forced to handle all of the work for other employees duties (Maria Pizzolo ("Pizzolo"), white female, and Eddie Cook ("Cook"), white male), by being paid less than white employees despite having higher qualifications, being referred to as the "black secretary," not

7

receiving transit expenses or a car allowance while all of the other non-union employees received such allowance, by not being reimbursed for school books after being told by Perry she would, being forced to, on or about July 1999, undergo a drug test that was not required for her position.  This drug test took place at the lunchroom which at the time was occupied by men.

45. Defendants Empire and/or Charmer use yearly and half yearly performance appraisals to describe and evaluate the employee's performance.

46. During the year 1998, Plaintiff received a positive performance evaluation.  The evaluation stated that Plaintiff's performance met her employer's legitimate expectations.

47. During the year 1999, under the supervision and direction of Stahl and Kohn, Plaintiff received a positive performance evaluation. The evaluation stated that Plaintiff's performance met her employer's legitimate expectations and exceeded expectations in some aspects.

48.  In the year 1999, Plaintiff received an annual bonus of $2,000.00 based on her work performance.

49. During the year 2000, under the supervision and direction of Jim Stahl, white male ("Stahl") and Roy Kohn, white male, ("Kohn"), Plaintiff received a good performance evaluation. The evaluation stated that Plaintiff has performed well in all job responsibilities.

50. On or about 2000, Plaintiff received an annual bonus of $2,200.00 based on her work performance.

51.  On or about 2001, under the supervision and direction of Stahl, Kohn and Mike Celenza ("Celenza"), white male, Plaintiff received a good performance evaluation. The evaluation shows that Plaintiff's performance met her employer legitimate expectations and exceeded expectations in written communication, file organization, supply ordering, label inventory and computer data entry.

52.  On or about 2001, Plaintiff received an annual bonus of $2,400.00 based on her performance.

53.  On or about 2002, under the supervision and direction of Stahl and Celenza, Plaintiff received a very good performance evaluation.  The evaluation states that Plaintiff's performance met her employer's legitimate expectations and exceeded expectations in some aspects.

54.  On or about 2002, Plaintiff received an annual bonus of $2,000.00 based on her good performance.

55.  On or about June 2002, in an effort to get out of the OD, Plaintiff applied for the Wine List Manager position at Park Avenue Division.  The position was listed on June 19, 2002.

56.  Defendant Charmer and/or Empire denied Plaintiff's application because of her age and/or race and/or in retaliation for opposing discriminatory practices.  The Hiring Manager, Michael Rieck ("Rieck') hired Lenahan, white female, approximately 34 years old.  At that time Plaintiff was 49 years old.  Lenahan was put in charge of entire department.  Plaintiff was qualified to fill this position.

57. On or about November 2002, in an effort to get out of the OD, Plaintiff applied for the Executive Assistant position at the Executive Office Division.    The position was listed on November 7, 2002.

58. Defendant Charmer and/or Empire denied Plaintiff's transfer application because of her age and/or race and/or in retaliation for opposing discriminatory practices. Hiring Manager, Jeanette Viscovich, white female and Stephen Meresman, white male, hired Mary (last name unknown), white female, approximately 33 years old. At that time Plaintiff was 49 years of age.    Plaintiff was qualified to fill this position.

59. During 2003, under the supervision and direction of Stahl, Erik Owings ("Owings"), white male, and Kohn, Plaintiff received a very good performance evaluation. The evaluation stated that Plaintiff performed her job properly and handled all aspects of her position.

60. On or about 2003, Plaintiff received an annual bonus of $2,000.00 based on her performance.

61. On or about May 2003, in an effort to get out of the OD, Plaintiff applied for the Price Posting Coordinator position at the Purchasing Planner/Buyer-Agent Division. The position was listed on May 28, 2003.

62. Plaintiff met with Jon Donnelly ("Donnelly"), white male, at approximately 7:30 a.m. in his office for the interview.    His staff was not there as yet.    Donnelly explained Plaintiff the new job responsibilities.    Donnelly also stated that he was looking to hire someone to fill the position for another 30 years. He impliedly

stated that Plaintiff was too old for that position.  At that time Plaintiff was 50 years old.  Plaintiff was qualified to fill this position.

63.    Donnelly eventually hired Nancy Nolan, a younger white female.

64.    On or about August 2003, in an effort to get out of the OD, Plaintiff applied for the Assistant Channel Manager position at the Channel Management Division. The position was listed on August 3, 2003.

65.    Defendant Empire and/or Charmer denied Plaintiff's transfer application because of her age and/or race and/or in retaliation for opposing discriminatory practices. Hiring Managers, Lou Macolino, white male & Paul Sharp, white male, hired Andrea Androtsakis, white female, approximately 30 years old.  Plaintiff at that time was 50 years old.  Plaintiff was qualified to fill this position.

66.    On or about November 2003, Plaintiff contacted James Vicente ("Vicente") with regard to an Account Development Specialist positions at Charmer.  There were three (3) job positions available which where listed on November 25, 2003. Plaintiff was qualified to fill this position.

67.    Kelly Brewer, white female, approximately 25 years old, Sandra Williams, Hispanic female, approximately 27 years old, and Kurt Bohrer, white male, approximately 25 years old were hired by Defendants.  At that time Plaintiff was 50 years old.  Defendant Empire and/or Charmer denied Plaintiff's application because of her age and/or race and/or in retaliation for opposing discriminatory practices.

68. On or about November 2003, in an effort to get out of the OD, Plaintiff applied for the Account Development Specialist position. The position was listed on November 25, 2003.

69. Lloyd Sobel, white male and HR rejected Plaintiff's application because of her age and/or race and/or in retaliation for opposing discriminatory practices instead hiring Maria Bordone, late 20's to mid-30s, Hispanic Female. At that time Plaintiff was 50 years of age. Plaintiff was qualified to fill this position.

70. On or about 2004, under the supervision and direction of Stahl, Owings and Kohn, Plaintiff received a good performance evaluation. The evaluation stated that Plaintiff completed her tasks and that she continues to be a positive asset to the OD.

71. On or about 2004, Plaintiff received an annual bonus of $1,500.00 based on her performance.

72. On or about February 2004, in an effort to get out of the OD, Plaintiff applied for the Sales position at Regal House/Greater Metro. The position was listed on February 17, 2004.

73. Subsequently Plaintiff went on an interview with hiring Managers, Sobel, Ira Friedman ("Friedman"), white male and Mike Kelly ("Kelly"), white male.

74. Defendant Empire and/or Charmer hired Sue Vegas, Hispanic female, approximately 28 years old ("Vegas"). At that time Plaintiff was 51 years old. Defendant Empire and/or Charmer failed to hire Plaintiff because of her age and/or race and/or in retaliation for opposing discriminatory practices. Plaintiff was qualified to fill this position.

75. On or about May 2004, in an effort to get out of the OD, Plaintiff applied for the Assistant Director of Finance & Administration position at Division Purchasing Planner/Buyer/Agent Division.  The position was posted on March 19, 2004.

76. Defendant Empire and/or Charmer denied Plaintiff's transfer application because of her age and/or race and/or in retaliation for opposing discriminatory practices. Plaintiff was qualified to fill this position.

77. Plaintiff met with Donnelly at approximately 7:30 a.m. in his office for the interview.  His staff was not there as yet. Donnelly explained Plaintiff the new job responsibilities.  Further, he stated that he is looking to hire someone to fill the position for another 30 years.  He impliedly stated that Plaintiff is too old for that position.  Plaintiff at that time was 51 years old.

78. Initially, Donnelly hired a white female for a short period of time and subsequently, he hired Adam Gold ("Gold"), white male, approximately 28 years old.  Plaintiff at that time was 51 years of age.

79. On or about May 2004, in an effort to get out of the OD, Plaintiff applied for the Merchandiser position at the Park Avenue Division.  There were two (2) positions available and they were listed on May 28, 2004.

80. Plaintiff's transfer application was rejected because of her age and/or race and/or in retaliation for opposing discriminatory practices.  Plaintiff was qualified to fill this position.

81. Defendant Empire and/or Charmer hired Lucuara Edward, Hispanic female, approximately 20 years old and another non African American individual to fill the positions.  Plaintiff at that time was 51 years old.

82. On or about June 2004, in an effort to get out of the OD, Plaintiff applied for the Administrative Manager position at the SWLD.  There were two (2) positions available listed on June 11, 2004.

83. Hiring Manager, Lenahan, rejected Plaintiff's application and hired Roxanne Colon, Hispanic female, approximately 33 and Philip Blanchfield, white male, approximately 25 years old ("Blanchard"). Plaintiff at that time was 51 years old. Plaintiff was qualified to fill this position.

84. Plaintiff's application was rejected because of her age and/or race and/or in retaliation for opposing discriminatory practices.

85. On or about July 2004, in an effort to get out of the OD, Plaintiff applied for the Administrative Manager Level II position at Park Avenue Division. The position was listed on July 12, 2004.

86. Plaintiff's application was rejected because of her age and/or race and/or in retaliation for opposing discriminatory practices. Defendants hired Kema Whelan, Asian female, approximately 42 years old.  At that time Plaintiff was 51 years old. Plaintiff was qualified to fill this position.

87. On or about November 2004, in an effort to get out of the OD, Plaintiff applied for the Purchasing Planner/Buyer/ Agent Position at the Assistant Purchasing Division.  The position was posted as of November 19, 2004.

88. Defendant Empire and/or Charmer and Lenahan denied Plaintiff's application because of her age and/or race and/or in retaliation for opposing discriminatory practices.  Plaintiff was qualified to fill this position.

89. On or about 2005, Plaintiff began again working for Lenahan.  Lenahan subjected Plaintiff to improper criticism of her work and gave her a biased, unsatisfactory performance evaluation.  Plaintiff refused to sign the evaluation.

90. On or about 2005, Plaintiff received an annual bonus of $1,250.00 based on her work performance.

91. On or about April 26, 2005, Perry called Plaintiff for a meeting in her office. When Plaintiff entered Perry's office, Kohn, Rieck and Lenahan were present.

92. During the meeting, Perry announced that the Plaintiff's position in the OD would be eliminated and that there was a position, Administrative Manager, available for Plaintiff under the supervision of Lenahan in the SWLD.

93. Plaintiff asked for an outline of the duties and responsibilities of the new position. Perry replied that there was no description for the new position.

94. While working at the SWLD, Plaintiff was the only African-American in that department.

95. Initially, Plaintiff worked directly with supervisor, Brenda Julio ("Julio"), Hispanic female and thus did not interact with Lenahan.   Under Julio's supervision, there were no complaints about Plaintiff's work.

96. Plaintiff's work included performing basic reports for Vicente and the Director of Bacardi Brands.

97. Plaintiff was working with Blanchard at which time they had a good work relationship.

98. Subsequently, Julio left Charmer.   Lenahan then became Plaintiff's direct supervisor again.

99. During a meeting, Plaintiff asked Lenahan whether she is entitled to reimbursement for travel and expenses as per company policy. Lenahan replied, "No you don't have the right personality." Plaintiff felt humiliated by Lenahan's comments and related conduct.

100. Lenahan did not communicate nor have any work relationship with Plaintiff. Under the circumstances, Plaintiff was forced to communicate to Lenahan through coworker Mary Orta ("Orta"), white female.

101. Orta instructed Plaintiff on how to perform her job and requested many times multiple corrections about the same assignment.

102. Orta, Blanchard and Dominick Bruccleri, white male, purposely attempted to make Plaintiff appear incompetent.

103. During 2005, at one of the meetings, Lenahan asked Plaintiff what she likes the most about the new job. Plaintiff stated that she was impressed with the new Dive software and that she got familiar with the program very quickly.

104. After that meeting, Plaintiff's work was manipulated and she was forced to make calls to the IT Department almost every day. Furthermore, she was constantly asked to re-do her work. Plaintiff was reprimanded for calls to Dive Software which she often did to ask Dive for a way to protect her work from others.

105. At that time, Lenahan permitted to access to Plaintiff's computer file and documents.

106. During 2005, Plaintiff complained to Perry about Lenahan's treatment of her.

107. Due to the hostile work environment, Plaintiff sought medical help and had started seeing a cardiologist. Plaintiff wore a heart monitor for one (1) week to

calculate her heart rate and measure the blood pressure. The Cardiologist advised Plaintiff to buy a blood pressure monitor to measure her blood pressure daily.

108. On or about July 2005, in an effort to get out from Lenahan's supervision, Plaintiff applied for the Premium Brand Specialist position at Regal House Office Division. The position was listed on July 30, 2005.

109. Plaintiff's transfer application was denied because of her age and/or race and/or in retaliation for opposing discriminatory practices. Plaintiff was qualified for this position.

110. Hiring Manager, Vicente hired Kelly Brewer, white female, approximately 28 years of age. At that time Plaintiff was 52 years old.

111. On or about November 21, 2005, in an effort to get out from Lenahan's supervision, Plaintiff applied for the Account Development Specialist position at SWLD. Hiring Manager, Laurie Maniatis ("Maniatis"), white female, rejected plaintiff's transfer application. Plaintiff received an e-mail from Shakanda Drones stating that she had to take a test for the position. However, no test was required on the job requisition.

112. Defendant Charmer and/or Empire eventually hired Nichole Bsoco, white female, approximately 30 years of age for the above mentioned position. At that time, Plaintiff was 52 years old.

113. Plaintiff's application was rejected because of her age and/or race and/or in retaliation for opposing discriminatory practices. Plaintiff was qualified for this position.

114. On or about November 23, 2005, Plaintiff applied for Administrative Manager/Supervisor position at SWLD. Hiring Manager Lenahan rejected plaintiff's promotional application because of her age and/or race and/or in retaliation for opposing discriminatory practices. Plaintiff was qualified for this position.

115. Defendant Charmer and/or Empire claimed that they were no longer hiring for the position. However, Defendant Charmer and/or Empire hired Gold for the position although Defendant Charmer and/or Empire changed the name of the position to Assistant Director of Finance. At that time, Plaintiff was 52 years old.

116. Gold became Plaintiff's supervisor. At that time Plaintiff was 52 years of age.

117. On or about December 5, 2005, in an effort to get out of the OD, Plaintiff applied for the Administrative Manager position at Park Avenue Division. Hiring Manager, Nina Nilson, white female rejected plaintiff's application. Plaintiff's transfer application was rejected because of her age and/or race and/or in retaliation for opposing discriminatory practices. Defendants hired Vegas. At that time, Plaintiff was 52 years old. Plaintiff was qualified for this position.

118. On or about March 23, 2006, Plaintiff applied for the Assistant Director of Finance & Administration position. Lenahan and HR rejected plaintiff's application.

119. On or about April 2006, Plaintiff met with Perry to discuss the 2005 job evaluation that she received from Lenahan. Plaintiff stated that Lenahan subjects her to a hostile work environment. Plaintiff also added that Lenahan denied Plaintiff's request for travel and expense reimbursement. Plaintiff informed Perry

of Lenahan's remarks "that Plaintiff does not have the right personality to receive travel and expense reimbursement." Perry stated that she would inform Rieck about her complaints.

120. Subsequently, Plaintiff met with Rieck. He stated that Lenahan does not have the authority to approve travel and expenses so that she could not have denied Plaintiff's request. Rieck also, stated that he was the only one who can approve Transit and Expense. Plaintiff was humiliated.

121. On or about January 17, 2007, Harry from the mailroom delivered Plaintiff an open envelope addressed to her. Enclosed in the open envelope was Plaintiff's 401K statement. This was the second time when Plaintiff received an open envelope containing her 401K statement. Plaintiff complained to Perry. Perry did nothing.

122. On or about January 17, 2007, Defendant Charmer and/or Empire held a Policy and Procedure meeting. All Charmer and/or Empire non-union employees received emails or letters stating to attend the said meeting. Plaintiff was not called for the above meeting.

123. On or about January 17, 2007, Lenahan and Mary Fernandez attended the 8:30 a.m. meeting. Plaintiff overheard Lenahan calling Roxanne Colon ("Colon") to attend the 1:00 pm meeting. Even though Plaintiff was nearby at her desk, Lenahan did not call Plaintiff to attend the said meeting.

124. Subsequently, at approximately 1:15 p.m., Plaintiff stepped into the meeting without the invite, D. Perry, Director of Education, asked Plaintiff to leave the meeting room, stating, "This meeting is not for you, Rose." Plaintiff stated that

she is a non-union employee and she should be allowed to attend the meeting just like every other non-union employee.  Perry insisted that Plaintiff should leave the room adding that he would meet with her the following day and explain. Embarrassed, Plaintiff left the meeting room.

125. Plaintiff was excluded from The Defendants' 2006 Budget Report meeting.

126. On or about January 25, 2007, Plaintiff sent an email to Perry to complain about being discriminated against.  Perry was unavailable.  Plaintiff then complained to Reick about the discriminatory treatment aimed at her by D. Perry and Lenahan. Rieck took no action against D. Perry.

127. On or about January 31, 2007 Plaintiff filed a complaint with Ann Giambusso, EVP, HR ("Giambusso"), white female.  In her complaint to Giambusso, Plaintiff alleged that she was treated differently when she was not called for the January 17th Policy and Procedure Meeting.  Furthermore, Plaintiff stated that she is discriminated against because of her color.  Plaintiff requested to meet with Giambusso.

128. Giambusso failed to respond to Plaintiff's allegations.

129. On or about February 2007, Plaintiff was required to complete the New Hot Sheet Format assignment.  Plaintiff worked under the supervision on Lenahan.

130. On or about February 2, 2007, Plaintiff managed and fit all SWLD Programs into the new format and forwarded the assignment to Lenahan.

131. On or about February 7, 2007, at approximately 11:30 am, Lenahan called Plaintiff in her office.  Lenahan yelled at Plaintiff as to why she did not complete

the New Hot Format assignment.  Plaintiff replied, stating that the assignment was completed on February 2nd and was submitted to the appropriate department.

132. During the discussion, Lenahan yelled at Plaintiff and did not allow her to speak. As Plaintiff proceed to speak to Lenahan, she held her head down and placed her arms around her head so that she could not see nor hear.

133. On or about February 7, 2007 at approximately 2:00 p.m., Lenahan came to Plaintiff and while pointing her index finger at her face stating in a loud voice that she wants "the work done by Friday."

134. Plaintiff met with Rieck and complained about Lenahan's discriminatory conduct. Rieck took no action.

135. Furthermore, Plaintiff met with Perry to report Lenahan's discriminatory attitude. Perry took no action.

136. On or about February 8, 2007, Plaintiff filed a second complaint with Giambusso, Reick and Perry.  Plaintiff alleged that she has been subjected to unfair and unequal treatment from her supervisors because of her color.

137. Neither Reick, nor Giambusso nor Perry responded to Plaintiff's allegations.

138. On or about April 10, 2007, Plaintiff received a termination letter stating that as a result of restructuring, Defendant Empire and/or Charmer were terminating Plaintiff's employment as of April 20, 2007.

139. Perry facilitated Plaintiff's termination because of Plaintiff's complaint of discrimination against D. Perry.

140. Plaintiff's termination from employment was a merely a pretext for discrimination and retaliation.

## FIRST CLAIM AGAINST DEFENDANT
### (Race Discrimination and Harassment under Title VII)

141. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

142. Title VII prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

143. Plaintiff is an African American and as such, is member of a protected class.

144. Plaintiff's termination from employment was a pretext for race discrimination.

145. Defendants Charmer and/or Empire discriminated against Plaintiff in violation of Title VII because Plaintiff was subject to adverse employment actions and to a hostile work environment from on or about July 2006 until her termination.

146. As a result of Defendant Charmer and/or Empire's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

147. Defendant Charmer and/or Empire acted intentionally and with malice and reckless indifference to Plaintiff's rights under Title VII and are thereby liable to Plaintiff for compensatory damages under Title VII.

## SECOND CLAIM AGAINST DEFENDANT
### (Race Discrimination and Harassment under the NYSHRL)

148. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

149. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

150. Plaintiff is an African American and as such, is member of a protected class.

151. Plaintiff's termination from employment was a pretext for race discrimination.

152. Defendant Charmer and/or Empire discriminated against Plaintiff in violation of the NYSHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment from on or about January 31, 2005 until her termination.

153. Defendants Lenahan, Perry and D. Perry "aided and abetted" said discrimination.

154. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

155. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYSHRL and are thereby liable to Plaintiff for compensatory damages under the NYSHRL.

## THIRD CLAIM AGAINST DEFENDANT
### (Race Discrimination and Harassment under the NYCHRL)

156. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

157. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

158. Plaintiff is an African American and as such, is member of a protected class.

159. Plaintiff's termination from employment was a pretext for race discrimination.

160. Defendant Empire and/or Charmer discriminated against Plaintiff in violation of the NYCHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment from on or about January 31, 2005 until her termination.

161. Defendants Lenahan, Perry and D. Perry "aided and abetted" said discrimination.

162. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

163. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYCHRL and are thereby liable to Plaintiff for compensatory damages under the NYCHRL.

**FOURTH CLAIM AGAINST DEFENDANT**
**(Retaliation under Title VII)**

164. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

165. Plaintiff complained to Defendants about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by Title VII.

166. Defendant Empire and/or Charmer discriminated and retaliated against Plaintiff because of her complaints and opposition to discrimination by subjecting her to

adverse employment actions including terminating her employment from on or about July 2006 until her termination.

167. Defendant Empire and/or Charmer's actions constitute discrimination and retaliation against Plaintiff in violation of Title VII.

168. As a proximate cause of Defendants Empire and/or Charmer's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

169. Defendants Empire and/or Charmer's actions were done with malice and with reckless indifference to Plaintiff's federally protected rights.

## FIFTH CLAIM AGAINST DEFENDANT
### (Retaliation in Violation of the NYSHRL)

170. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

171. Plaintiff complained to Defendants about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by the NYSHRL.

172. Defendant Empire and/or Charmer's discriminated and retaliated against Plaintiff because of her complaints and opposition by denying Plaintiff a transfer(s), promotion(s) and subjecting her to a hostile work environment from on or about January 31, 2005 until her termination.

173. Defendant Empire and/or Charmer's actions constitute discrimination and retaliation against Plaintiff in violation of the NYSHRL.

174. Defendants Lenahan, Perry and D. Perry "aided and abetted" said discrimination.

175. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

176. Defendants' actions were done with malice and with reckless indifference to Plaintiff's protected rights.

## SIXTH CLAIM AGAINST DEFENDANT
### (Retaliation in Violation of the NYCHRL)

177. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

178. Plaintiff complained to Defendant Empire and/or Charmer about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by the NYCHRL.

179. Defendant Empire and/or Charmer discriminated and retaliated against Plaintiff because of her complaints and opposition by denying Plaintiff a transfer(s), promotion(s) and subjecting her to a hostile work environment from on or about January 31, 2005 until her termination.

180. Defendants Empire and/or Charmer's actions constitute discrimination and retaliation against Plaintiff in violation of the NYCHRL.

181. Defendants Lenahan, Perry and D. Perry "aided and abetted" said discrimination.

182. As a proximate cause of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

183. Defendants' actions were done with malice and with reckless indifference to Plaintiff's protected rights.

## SEVENTH CLAIM AGAINST DEFENDANT
### (Age Discrimination, Harassment and Retaliation under the ADEA)

184. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

26

185.  The ADEA prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's age and retaliation for opposition to discriminatory practices.

186.  Plaintiff is 55 years old and as such, is member of a protected class.  Plaintiff was more than 40 years old at all relevant times mentioned herein.

187.  Plaintiff's termination from employment was a pretext for age discrimination.

188.  Defendant Empire and/or Charmer discriminated and retaliated against Plaintiff in violation of the ADEA because Plaintiff was subject to adverse employment actions and a hostile work environment from on or about July 2006 until her termination.

189.  Plaintiff complained to Defendant Empire and/or Charmer about the harassment and discrimination she experienced and otherwise opposed practices made unlawful by the ADEA.

190.  As a result of Defendant Empire and/or Charmer's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

191.  Defendant Empire and/or Charmer acted intentionally and with malice and reckless indifference to Plaintiff's rights under the ADEA are thereby liable to Plaintiff for compensatory damages under the ADEA.

## EIGHTH CLAIM AGAINST DEFENDANT
### (Age Discrimination and Harassment under the NYSHRL)

192. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

193. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's age.

194. Plaintiff is 55 years old and as such, is member of a protected class.  Plaintiff was more than 40 years old at all relevant time mentioned herein.

195. Plaintiff's termination from employment was a pretext for age discrimination.

196. Defendant Empire and/or Charmer discriminated against Plaintiff in violation of the NYSHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment from on or about January 31, 2005 until her termination.

197. Defendants Lenahan, Perry and D. Perry "aided and abetted" said discrimination.

198. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

199. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYSHRL and are thereby liable to Plaintiff for compensatory damages under the NYSHRL.

**NINTH CLAIM AGAINST DEFENDANT**
**(Age Discrimination and Harassment under the NYCHRL)**

200. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

201. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's age.

202. Plaintiff is 55 year old and as such, is member of a protected class. Plaintiff was more than 40 years old at all relevant time mentioned herein.

203. Plaintiff's termination from employment was a pretext for age discrimination.

204. Defendant Empire and/or Charmer discriminated against Plaintiff in violation of the NYCHRL because Plaintiff was denied a transfer(s), promotion(s) and was subject to a hostile work environment from on or about January 31, 2005 until her termination.

205. Defendants Lenahan, Perry and D. Perry "aided and abetted" said discrimination.

206. As a result of Defendants discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, mental anguish, emotional distress, humiliation, and loss of reputation.

207. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYCHRL and are thereby liable to Plaintiff for compensatory damages under the NYCHRL.

## TENTH CLAIM AGAINST DEFENDANT
### (Violation of 42 U.S.C. Section 1981)

208. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

209. Plaintiff is an African American and as such, is member of a protected class.

210. Plaintiff's termination from employment was a pretext for race discrimination.

211.  Defendants subjected Plaintiff to a hostile work environment because of her race.

212.  Defendants retaliated against Plaintiff because of her opposition to race discrimination.

213.  Defendants by their discriminatory and retaliatory conduct as described herein violated the 13th Amendment to the Constitution as protected by 42 U.S.C. §1981.

214.  Defendants acted intentionally and with malice and reckless indifference to Plaintiff's federally protected rights.

215.  Defendants are liable for their discriminatory and retaliatory conduct as outlined above from January 31, 2004 until her termination.

216.  As a proximate cause of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

217.  Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

218.  A judgment declaring that the practices complained of herein are unlawful and the acts of Defendants are in violation of the ADEA; the "NYSHRL"; the "NYCHRL" and Section 1981.

219.  Reinstatement of Plaintiff to her position at Charmer and/or Empire;

220.  Granting an order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

221. All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits she would have received but for Defendants' discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

222. Front pay to Plaintiff until such time as he can be placed in the same position he would have occupied but for Defendants' discriminatory practices;

223. Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional conduct;

224. Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

225. Pre-judgment and post-judgment interest, as provided by law; and

226. Granting Plaintiff other and further relief as this Court finds necessary and proper.

### *DEMAND FOR TRIAL BY JURY*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: Carle Place, New York
   November 18, 2008

     Respectfully Submitted,

     The Law Office of
     BORRELLI & ASSOCIATES, P.L.L.C.

   By:     _/s/_
     MICHAEL J. BORRELLI (MB 8533)
     *Attorneys for Plaintiff*
     One Old Country Road, Suite 347
     Carle Place, NY 11514
     Tel. (516) 248-5550
     Fax. (516) 248-6027